IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02132-WYD-CBS

LARRY ALLEN THOMPSON,
    Plaintiff,
v.

KEVIN MILYARD, Warden Sterling Corr. Fac.,
LLOYD WAIDE, Major/SCF Security, and
GARY LITTLE, Captain/SCF Housing (LU-1),
    Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on the Motion to Dismiss filed by Defendants Milyard, Waide, and Little on January 22, 2008 (doc. # 15). Plaintiff Thompson's Response (doc. # 21), was filed on February 8, 2008. Pursuant to the Order of Reference dated January 22, 2008 (doc. # 17) and the memorandum dated January 23, 2008 (doc. # 18), this motion was referred to the Magistrate Judge. The court has reviewed the parties' briefs, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    *Pro se* Plaintiff Larry Allen Thompson is currently incarcerated at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC"). Mr. Thompson alleges, pursuant to 42 U.S.C.§ 1983, that Defendants in their individual capacities violated his constitutional rights while he was incarcerated at SCF. *See* Complaint

1

(doc. # 3) at pp. 4-6.[1] Specifically, Mr. Thompson alleges that on August 1, 2006, Defendants sanctioned a "public" strip search during which he was forced to expose himself to the view of both assembled prison inmates and prison staff. *See* Complaint at pp. 3-4. Mr. Thompson asserts three claims in his Amended Complaint: (1) that the Defendants violated his Fourth Amendment right to privacy when they subjected him to a "public" strip search on August 1, 2006; (2) that the public nature of the strip search constituted a violation of his Eighth Amendment protections against "cruel and unusual" punishment; and (3) that the Defendants, by sanctioning the public strip search, violated his Fourteenth Amendment rights to privacy and equal protection. *See* Complaint at pp. 5-8. Mr. Thompson seeks an injunction against "public" searches by the CDOC, as well as punitive damages of $15,000. *See* Complaint at p. 8. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Mr. Thompson has failed to state a claim for which relief can be granted.[2]

II.     Standard of Review

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Written documents attached to the complaint as exhibits are part of the complaint and

may be considered by the court when evaluating a Rule 12(b)(6) motion to dismiss. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). Because Mr. Thompson appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). A court may not, however, assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.  Analysis

A.  Liability of Defendants under § 1983

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it provides a remedy for violations of rights secured by federal statutory and

3

constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

B.  Fourth Amendment

Although the constitutional rights of prison inmates are limited, prisoners do retain a privacy interest in their own bodily integrity, *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995), and strip searches represent "an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993). The legitimate needs and concerns of prison officials, however, may outweigh this limited right to privacy. Thus, for example, the Supreme Court has held that, in determining whether body cavity searches violate the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Courts must balance "the significant and legitimate security interests of the institution against the privacy interests of the inmates . . . ." *Id.* at 560.

In deference to the judgments of prison officials, the Supreme Court has rejected heightened scrutiny for inmates' constitutional claims, requiring only that the actions of prison officials have a "rational relationship to some legitimate penological interest." *See Michenfelder v. Sumner*, 860 F.2d 328, 331 n.1 (8th Cir. 1988) (applying *Turner v. Safley*, 482 U.S. 78, 89 (1987) to a strip search claim under the Fourth Amendment and stating that "we believe that *Turner v. Safley's* suggested factors can be instructive in the context of other prisoners' rights

cases"). In this case, a restriction of Mr. Thompson's privacy interests is justified to the extent that it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. at 89. The Supreme Court rejected the "least restrictive alternative" test for prison regulation, meaning that prison officials are not always required to select the least invasive form of action or regulation possible under the circumstances. *Id.* at 90-91.

Prison officials are not, however, free to ignore the rights of inmates under the Fourth Amendment, and the presence of readily available and less intrusive alternative means of fulfilling prison officials' legitimate penological interests may be evidence that a prison regulation fails to meet the "reasonable relationship" standard. *Id.* at 90-91. The Tenth Circuit Court of Appeals has held that a prison strip search must be conducted in private unless prison officials have a rational basis for conducting the search in a public place. *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002). Strip searches that are not conducted in private require separate justifications for both the search itself and for the "public" nature of the search. *Id.* The Tenth Circuit has held that the manner in which a body cavity search was conducted presented a legitimate question of fact as to the reasonableness of the search, where a male prisoner was strip searched in the presence of over 100 people, including female secretaries and personnel from other buildings. *Hayes v. Marriot*, 70 F.3d at 1145. Yet in another case, the Tenth Circuit found that a search of a male prisoner in the presence of female correctional cadets was justified by the legitimate state interest in preparing cadets to conduct strip searches of male inmates. *Jackson v. Central New Mexico Correctional Facility*, 976 F.2d 740, *3 (10th Cir. 1992) (unpublished opinion).[3]

Mr. Thompson does not dispute the constitutionality of prison strip searches in general,

5

nor does he dispute that Defendants had a legitimate basis for conducting a prison "shakedown" on August 1, 2006. *See* Complaint at p. 6. Moreover, Mr. Thompson does not allege that the August 1, 2006 search was connected to a larger pattern of abuse. The Complaint does not allege that the challenged search was observed by individuals other than the inmates and prison officials involved in the prison shakedown. *Compare Hayes*, 70 F.3d at 1145. Rather, Mr. Thompson's Fourth Amendment claim rests on the premise that the public manner of the August 1, 2006 strip search was a violation of his constitutional rights because the Defendants did not take precautions to shield the prisoners being searched from the view of the other assembled inmates. *See* Plaintiff's Response (doc. # 21), at pp. 7-8.

Mr. Thompson contends that the August 1, 2006 search was conducted in "blatant disregard" of 28 C.F.R § 552.11. *See* Complaint at p. 11. Section 552.11 governs only the Federal Bureau of Prisons, not the Colorado Department of Corrections. More importantly, a violation of a prison regulation is insufficient to state a constitutional claim under § 1983. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("failure to adhere to administrative regulations does not equate to a constitutional violation"). *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("[t]o the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, . . . he has stated no cognizable claim under § 1983") (citations omitted).

On a motion to dismiss under Rule 12(b)(6), the court must simply consider whether Plaintiff Thompson has presented sufficient factual allegations to suggest a right to relief that is more than speculative. I conclude that Mr. Thompson has met that burden. Documents attached to Plaintiff's Amended Complaint suggest that the strip search at issue was instituted to eradicate

6

dangerous contraband and illicit drug usage within Sterling Correctional Facility. Apparently to achieve the element of surprise, inmates were removed to the gymnasium, after which their living units were searched "without the offenders being present."

> Each pod, which consists of around 96 inmates, was taken separately to the gymnasium. The strip searches occurred in the gymnasium in groups of approximately 16 inmates at a time. The offenders being search (sic) were made to face the wall and the staff members conducting the searches were positioned between offenders who were being searched and those who already had been or were waiting to be searched. Due to the large (sic) of offenders that needed to be searched in a relatively short period of time, (approximately 1,100 total offenders), this is the method (sic) was employed. This was a one-time event and offenders are not routinely strip searched in this manner.

*See* Response to Grievance #SF06/07-0263, attached to Complaint (doc. # 3 at p. 14 of 14).

Mr. Thompson's Amended Complaint disputes the assertion that this search procedure was reasonable under the particular circumstances of this case. In support of this assertion, Mr. Thompson cites a search procedure that was implemented on July 27, 2006, in which strip searches were conducted in the living units and inmates were individually searched in the privacy of their assigned cell. Mr. Thompson also states that on previous occasions when mass strip searches were conducted in the gymnasium, "the strip searches were conducted at the rear of the gym and after an individual had been inspected they were directed to sit on the gym floor with their backs to the search area." *See* Plaintiff's Response, at p. 6.

I conclude that Mr. Thompson has raised issues of fact as to whether the August 1, 2006 search had a rational relationship to legitimate penological interests. Mr. Thompson is reminded that prison officials are not constitutionally required to conduct searches in the "least intrusive" manner. *See Turner v. Safley*, 482 U.S. at 90-91 (rejecting least restrictive alternative test). Nevertheless, without more factual development, the court cannot determine that Mr.

Thompson's Fourth Amendment claim is implausible. As to Mr. Thompson's Fourth Amendment claim, the Motion to Dismiss is properly denied at this stage of the litigation.

C. Eighth Amendment

The Supreme Court has extended the Eighth Amendment beyond punishments that are "physically barbarous." *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). When a punishment is not alleged to be "physically barbarous," there must have been unnecessary and wanton infliction of pain. *Id.* at 346. The "unnecessary and wanton" standard includes punishments that are "so totally without penological justification" as to result in the "gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). When physical abuse is not alleged, the actions must represent more than an ordinary lack of due care for the prisoner's interest or safety. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Id.* The Tenth Circuit has ruled that to constitute an Eighth Amendment violation, a strip search must involve abuse or unnecessary force. *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986).

Mr. Thompson's allegations do not implicate the Eighth Amendment protections recognized by the Supreme Court in *Rhodes*. Mr. Thompson has not alleged physical abuse associated with the search on August 1, 2006. Nor has he demonstrated either that the strip search was imposed as punishment or that it was conducted without any penological justification. Even taking Mr. Thompson's allegations in the most favorable light most favorable, his Eighth Amendment claim fails to state a claim upon which relief can be granted.

8

D.      Fourteenth Amendment Due Process Right to Privacy

Mr. Thompson claims that the August 1, 2006 search violated his Fourteenth Amendment due process right to privacy. The Fourteenth Amendment Due Process Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 766 (10th Cir. 2008) (internal quotation marks and citation omitted). "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Id.* at 767 (citation omitted).

However, substantive due process claims are disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). As Mr. Thompson's due process claim is co-extensive with his Fourth Amendment claim, it is unnecessary to apply a substantive due process analysis to this claim.

Moreover, "[t]o state a claim for a deprivation of substantive due process, a plaintiff must make three showings based upon the Fourteenth Amendment." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 631 (M.D. Pa. 2006). "First, the defendant must have acted under color of state law at the time the alleged deprivation occurred. Second, the plaintiff must show the existence of a protected interest in life, liberty, or property that has been interfered with by the state defendant." *Id.* "The third factor is that the defendant's action must shock the conscience." *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) ("the core of the concept"

9

of due process is "protection against arbitrary action" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense.")). *See also Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) ("[T]he substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.'"). As Mr. Thompson fails to allege that the challenged conduct rose to a level to shocks the conscience, his Fourteenth Amendment claim based on a due process right to privacy is properly dismissed.

E.  Fourteenth Amendment Right to Equal Protection

Mr. Thompson's Equal Protection claim fails because his allegations can be analyzed under textual rights provided by the Fourth Amendment and because he has not alleged any disparate treatment directed toward him by the Defendants. *See Vasquez v. Cooper*, 862 F.2d 250, 252 (10th Cir. 1988) ("In order for [the Plaintiff] to prevail on an equal protection theory, he . . . must show that he is a member of a class that was denied a benefit available to other similarly situated individuals, and that such a denial is not rationally related to legitimate state interests.").

F.  Qualified Immunity

"Although qualified immunity is an affirmative defense, it is one that may, in some circumstances, be raised and decided on a motion to dismiss before the parties have commenced discovery." *Connor v. Foster*, 833 F. Supp. 727, 730 (N.D. Ill. 1993). A defense of qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the

face of the complaint." *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996) (internal quotation marks and citation omitted). A defense of qualified immunity can lead to dismissal under Rule 12(b)(6) when "the Complaint itself demonstrates plaintiffs' failure to allege the violation of any clearly established right, with no additional facts needed for that legal determination." *Landstrom v. Illinois Dept. of Children & Family Services*, 892 F.2d 670, 675 n. 8 (7th Cir.1990). As the court concludes that Mr. Thompson has adequately stated a Fourth Amendment claim, Defendant's Motion to Dismiss cannot be granted on a theory of qualified immunity.

Accordingly, IT IS RECOMMENDED that Defendants' Motion to Dismiss Complaint (filed January 22, 2008) (doc. # 15) be DENIED as to Claim One and GRANTED as to Claims Two and Three and that Claims Two and Three be DISMISSED with prejudice.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 14th day of July, 2008.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge

---

1. Mr. Thompson sought leave to amend his original Complaint with a "Motion for Leave to Amend Complaint" (doc. # 26) filed on February 8, 2006 and granted on May 23, 2008. In the amendments, Mr. Thompson clarified that Defendants are being sued in their individual capacities and withdrew his request for compensatory damages. Mr. Thompson's original Complaint, together with these two amendments, are treated as his Amended Complaint.

2. The additional ground for dismissal under Fed.R.Civ.P. 12(b)(1) is moot because Mr. Thompson has withdrawn all claims against the State of Colorado for compensatory damages. *See* Grant of Motion for Leave to Amend (doc. #27).

3. A copy of this unpublished opinion is attached to this Recommendation.